UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARISSE MITCHELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:13CV522 JAR |

## **MEMORANDUM AND ORDER**

This is a pro se action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Charisse Mitchell's ("Mitchell") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-85.

**I. Background**

On November 25, 2008, Mitchell filed an application for disability insurance and supplemental security income benefits, alleging disability since November 10, 2008. (Tr. 245-254) The Social Security Administration ("SSA") denied Mitchell's claims on December 23, 2008. (Tr. 105) She filed a timely request for a hearing before an administrative law judge ("ALJ") on January 9, 2009. (Tr. 105) Following a hearing on February 4, 2010 (Tr. 31-65), the ALJ issued a written decision on April 15, 2010, upholding the denial of benefits. (Tr. 105-116) Mitchell requested review of the ALJ's decision by the Appeals Council. (Tr. 15) On April 13, 2011, the Appeals Council remanded the case, directing the ALJ to obtain supplemental evidence

from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. (Tr. 118-19)

Mitchell appeared and testified at a hearing held on January 5, 2012. (Tr. 66-98) She was accompanied by Matthew Moreno, a non-attorney representative. (Tr. 129-30) Following the hearing, the ALJ issued a written decision on February 7, 2012, upholding the denial of benefits. (Tr. 13-30) Mitchell again requested review of the ALJ's decision by the Appeals Council. (Tr. 8-9) On February 14, 2013, the Appeals Council denied her request for review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Mitchell filed this appeal on March 14, 2013. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 12) Mitchell failed to file a brief in support of her Complaint pursuant to the Court's case management order. (Doc. No. 7) Accordingly, the Court gave Mitchell ten days to file a written statement of the reasons why she believes the Commissioner erred in her decision denying her application for benefits. (Doc. No. 14) When Mitchell failed to file a written statement of reasons, the Court directed the Commissioner to file a brief in support of the answer. (Doc. No. 15) The Commissioner filed her brief on May 22, 2014. (Doc. No. 16) Mitchell has not filed a reply. The Court will, therefore, review the case on the basis of the Commissioner's brief and the administrative record filed herein.

**II.    Decision of the ALJ**

The ALJ determined that Mitchell met the insured status requirements of the Social Security Act through December 31, 2012, and had not engaged in substantial gainful activity since November 10, 2008, the alleged onset date of disability. (Tr. 15-16)  The ALJ found Mitchell had the severe impairments of congestive heart failure, hypertension, morbid obesity,

asthma and osteoarthritis, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16)

After considering the entire record, the ALJ determined Mitchell had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in the regulations in that she can lift or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk for a total of about two hours in a workday with the normal breaks; sit for a combined total of at least six hours in a workday with the normal breaks; no climbing of ropes, ladders, or scaffolds; occasional use of ramps, stairs, kneeling, crouching, or crawling; the claimant is able to balance or stoop frequently; and should avoid concentrated exposure to pulmonary irritants. (Tr. 17) The ALJ found Mitchell unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 22-23) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 32) The Commissioner maintains that the ALJ's decision was supported by substantial evidence on the record as a whole.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on January 5, 2012. (Tr. 66-98) The ALJ heard testimony from Mitchell and Dale Thomas, a vocational expert.

### 1. Mitchell's testimony

At the time of the hearing, Mitchell was 38 years old and married with four children ages 23, 20, 18 and 10. (Tr. 72) The two younger children live with her and her husband at her

brother's home. (Tr. 72-73) Her spouse is unemployed. (Tr. 73) Mitchell completed the ninth grade and has a GED. (Tr. 73) Mitchell has formal vocational training as a medical assistant. (Tr. 73) From 2005 to 2008 she worked at Myrtle Hilliard Davis Comprehensive Health Center as a medical assistant, taking patients' vital signs and scheduling appointments. (Tr. 70-71) She was terminated in November 2008 for absenteeism. (Tr. 71) She applied for and received unemployment benefits for two years. (Tr. 71) During that time she was looking for full-time nursing jobs; she last applied for a job in October 2010. (Tr. 71-72, 76-77) Her caseworker told her she needed to apply for jobs in order to get unemployment benefits, but it was her testimony that she had no intention of working. (Tr. 77-78)

Mitchell is 5'7" and weighs approximately 350 pounds. (Tr. 83) It was her testimony that she is unable to work because she has congestive heart failure, degenerative joint disease, high blood pressure, severe asthma, right eye blindness and blurry vision in her left eye. (Tr. 75-76) These impairments cause her to have chest pains, shortness of breath, dizziness and headaches. (Tr. 79-82) Mitchell stated she has difficulty walking, sitting or standing for long periods and cannot bend her leg without pain. (Tr. 80-81) She has to prop up her leg regularly. (Tr. 81) She has been blind in her right eye since childhood. (Tr. 82) She has headaches four to five times a week, lasting all day. (Tr. 82-83)

In a typical day Mitchell gets up and helps her daughter get ready for school. When she returns from driving her daughter to school, she cleans her kitchen and watches television or reads. (Tr. 86-87) She takes frequent naps during the day (Tr. 85), but admitted she did not take any pain medication. She is unable to cook, clean her house or do laundry because she is unable to stand, but she is able to wash dishes with rest breaks and sweep her floors. (Tr. 83-85)

4

Mitchell has a driver's license, but hasn't driven a vehicle in over a year because she has no sight in her right eye. (Tr. 73) Mitchell testified that she doesn't go out of the house for church or social events or to visit family. (Tr. 87) She sees her doctors every three months. (Tr. 87) She smokes a half pack of cigarettes a day. (Tr. 87-88) She still smokes because when she quits her weight goes up. (Tr. 89)

    **2.    Testimony of Vocational Expert**

Based on the record, vocational expert Dale Thomas classified Mitchell's work over the past fifteen years as a certified nursing assistant and registered medical assistant as CNA work, medium, semi-skilled, performed at a heavy level. (Tr. 91-93)

For hypothetical one, the ALJ asked Thomas to assume an individual of the claimant's age, education, and past work experience capable of lifting and carrying ten pounds occasionally, less than ten pounds frequently, who can stand and/or walk for a total of about two hours in an eight hour day, sit at least six hours total in an eight hour day, with the normal breaks, would not be able to climb ladders or scaffolds, only occasionally use ramps or stairs, kneel, crouch or crawl, and who could frequently balance or stoop but would need to avoid concentrated exposure to pulmonary irritants. He determined that such a person would be unable to perform any of Mitchell's past work. (Tr. 93) Such a person would, however, have the ability to adjust to and perform other work, such as a patcher DOT 723.687-010, at an unskilled, sedentary level. (Tr. 93) There are approximately 15,500 of these jobs in the nation and approximately 400 in Missouri. (Id.) There would also be work as an inspector, tester, sorter, weigher and touch-up screener, DOT 726.684-110. (Tr. 94) For this group of unskilled, sedentary jobs, there are 7, 700 in the nation and 150 in the region. (Id.) There are also jobs as interviewers and charge-account

5

clerks, DOT 205.367-014. In that group, there are 36,000 jobs nation-wide and 950 in the region. (Id.)

For the second hypothetical, the ALJ asked Thomas to assume the same limitations from the first hypothetical with the additional limitation: that the person would not have binocular vision, in other words, blindness in one eye. (Id.) Thomas determined this additional limitation would not affect the ability to perform any of those jobs. (Id.)

For the third hypothetical, the ALJ asked Thomas to assume the same limitations from the first and second hypotheticals with the additional limitation that the individual would need to avoid moderate exposure to irritants such as fumes, odors, dust, gasses, poor ventilation, and avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. (Tr. 94-95) Thomas determined that past work would not be possible because the past work was done at a greater exertional level, but there was one job still available. (Tr. 95)

For the final hypothetical, the ALJ asked Thomas to assume an individual able to lift and carry less than five pounds frequently, five pounds occasionally, ability to stand and/or walk less than an hour in a work day, less than 15 minutes continuously, sit less than an hour in a work day for 15 minutes continuously, no limitation on pushing or pulling, including hand and/or foot controls, occasionally climb, stoop, kneel, reach, handle, finger, feel, occasional near/far acuity, occasional depth perception, occasional speak/hear, required use of a cane, need to avoid concentrated exposure to dust and fumes, vibration, hazards and heights and moderate exposure to extreme heat or cold, wetness or humidity. (Tr. 96) Considering all of these factors, Thomas determined that past work would not be possible and there would be no other work possible. (Id.)

**B.     Medical Records**

The ALJ summarized Mitchell's medical records at Tr. 18-20. Relevant medical records are discussed as part of the analysis.

IV.     **Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

7

impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number

of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

   (1) The findings of credibility made by the ALJ;
   (2) The education, background, work history, and age of the claimant;
   (3) The medical evidence given by the claimant's treating physicians;
   (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
   (5) The corroboration by third parties of the claimant's physical impairment;
   (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
   (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her supporting brief, the Commissioner takes the position that the ALJ's residual functional capacity (RFC) finding is supported by substantial evidence. A claimant's RFC is

defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Voegtlin v. Colvin, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing McCoy v. Astrue, 648 F.3d 605 (8th Cir.2011)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski, 739 F.2d at 1322; 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir.2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.2000).

The ALJ found that while Mitchell's medically determinable impairments could reasonably be expected to cause symptoms, her testimony regarding the intensity, persistence and limiting effects of those symptoms was not credible to the extent it was inconsistent with the RFC assessment. In evaluating a claimant's credibility, the ALJ is required to apply the factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984), which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence

does not fully support those claims. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified several reasons for discounting Mitchell's credibility. First, Mitchell's described daily activities were not as limited as her testimony suggested (Tr. 21). She admitted in her function report that she was able to perform most household chores and to care for herself and her children. (Tr. 21, 351-55) She drove her daughter to school each day. (Tr. 21, 86-87, 354) The ability to perform such activities is inconsistent with Mitchell's alleged inability to perform even sedentary work activity. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013); Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012) (citations omitted).

Second, Mitchell's medical treatment records did not support her allegations. (Tr. 21) In fact, the record revealed relatively infrequent visits to the doctor for her allegedly disabling symptoms; most of her doctor visits were for issues unrelated to congestive heart failure, such as respiratory infections and asthma exacerbation. (Tr. 447-465; 475-488) Mitchell reported no cardiac symptoms such as fatigue, chest discomfort, palpitations or dyspnea to her primary care doctors from 2009 through 2011. (Tr. 441-504; 633-659; 669-730; 739-762; 777-852; 853-863) Complaints of functional limitations are inconsistent with the failure to seek regular medical treatment for symptoms. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997).

In September 2008, Mitchell presented to cardiologist Jennifer Lash, M.D., with episodes of chest pain. Dr. Lash reported that two previous cardiac catheterizations showed Mitchell's cardiomyopathy was nonischemic.[1] Her ejection fraction (EF)[2] had improved to 44% from a low

---

[1] Cardiomyopathy refers to heart muscle disease. Non-ischemic cardiomyopathy includes types of cardiomyopathy that are not related to coronary artery disease.
http://www.lifescript.com/health/centers/cholesterol/related_conditions/cardiomyopathy.aspx (last visited June 10, 2014).

of 25%, which appeared to be related to a postpartum condition. (Tr. 434-435) A chest x-ray showed no acute cardiopulmonary disease. (Tr. 570) In January 2009, Mitchell's EF was 50%, with no evidence of ischemia. (Tr. 625-626) Dr. Lash opined that Mitchell's complaints of chest pain were likely due to asthma and recommended a stress test. (Tr. 624)

In February 2010, cardiologist Ryan Berg, M.D., examined Mitchell. (Tr. 663-668) An ECG showed a normal sinus rhythm with left ventricular hypertrophy, but no evidence of ischemia or infarction. (Tr. 666) Her EF was normal. (Id.) Dr. Berg opined that Mitchell's cardiomyopathy had improved significantly with medical treatment, but her function had not shown a similar improvement. He directed her to lose weight and control her blood pressure. (Id.) Mitchell was offered treatment at a cardiac rehab maintenance program which involved supervised exercise twice a week, however, she indicated to Dr. Berg that she preferred to try other methods. (Id.)

Mitchell was examined in July 2011 by cardiologist Michael Lim, M.D. She reported severe headaches after stopping her medications. Her blood pressure was significantly elevated and she was given medication in the exam room. After thirty minutes her blood pressure had dropped and she reported feeling better. The rest of the examination was normal. (Tr. 765-776) Mitchell returned to Dr. Lim in August 2011 and reported she was feeling better. She denied any chest pain, shortness of breath, syncope or palpations. Dr. Lim opined that Mitchell was doing well from a cardiac standpoint. (Tr. 864-881)

After falling in May 2010, Mitchell complained of pain in her left knee, but her examination was normal. (Tr. 739-742) An x-ray of her left knee showed moderate osteoarthritis.

---

[2] Ejection fraction is a measurement of heart function, specifically the percentage of blood leaving the heart each time it contracts. www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited June 9, 2014). A normal EF ranges from 55-70%. An EF of less than 40% may confirm a diagnosis of heart failure. http://my.clevelandclinic.org/heart/disorders/heartfailure/ejectionfraction.aspx (last visited June 9, 2014).

(Tr. 732) In July 2010, Mitchell reported she was unable to stand or walk due to her knee pain, but the doctor observed no swelling or warmth and her gait and stance were normal. She was referred to an orthopedist. (Tr. 754-755)

In November 2010, Mitchell was examined by orthopedist David Kieffer, M.D. An x-ray showed minimal degenerative joint disease. She was diagnosed with osteoarthritis, prescribed medication and given an injection. (Tr. 853-853) In December 2010, Mitchell returned to her primary care physician. Her gait and stance were normal, with no swelling or warmth in the knee. Mitchell was directed to follow up with her orthopedist. (Tr. 750)

In January 2011, Mitchell reported severe pain to Dr. Kieffer. She was given medication and an injection and directed to lose weight. (Tr. 858) She did not return to Dr. Kieffer until June 2011. An x-ray again showed moderate osteoarthritis of the left knee and probable villonodular synovitis lateral to the distal end of the femur. She was given an injection and admitted that she was taking her pain medication only intermittently. (Tr. 827, 853) Mitchell was examined by another orthopedist, Adnan Cutuk, M.D., in December 2011. She had normal knee motion and stability in her knees, but her range of motion was reduced. Dr. Cutuk recommended a different type of injection, weight loss and physical therapy. (Tr. 882-886)

In summary, the ALJ observed that Mitchell's medical treatment had been relatively routine and conservative. (Tr. 21). A pattern of conservative medical treatment is a proper factor for an ALJ to consider in evaluating a claimant's credibility. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Her diagnosed conditions of hypertension and asthma were well controlled with medication, and despite her complaints of arthritis, Mitchell was only taking over-the-counter medication at the time of her second administrative hearing. (Tr. 75) The record shows that Mitchell's EF improved

13

significantly with treatment. (Tr. 21, 435, 666) "Impairments that are controllable or amenable to treatment do not support a finding of total disability." Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)

The record also contained numerous instances of Mitchell's noncompliance with her doctors' recommendations to take her medication, stop smoking, exercise and lose weight. (Tr. 444, 447, 449, 451, 454, 458, 460, 463, 466, 475, 478, 633, 635, 638, 641, 645, 647, 649, 652, 656, 696, 739, 744, 746, 748, 751, 777, 785, 788, 791, 805, 853, 858, 860, 882, 886, 889) She frequently cancelled or failed to show up for doctor appointments. (Tr. 432, 437) Noncompliance with treatment is another proper factor in the credibility analysis. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).

Finally, the ALJ considered that during the same period she claimed she was disabled, Mitchell also collected unemployment benefits. (Tr. 21, 71) A claimant who applies for unemployment compensation benefits holds herself out as available, willing, and able to work. Because such an application necessarily indicates an ability to work, it is evidence which negates an applicant's claim that she was disabled. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). See also Black, 143 F.3d at 387. Mitchell testified she looked for work and believed she was capable of working during this period (Tr. 21, 77). Her statements are inconsistent with disability and indicates she did not view her symptoms as disabling. See Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

For all of these reasons, the ALJ determined that Mitchell's subjective description of disabling symptoms was not credible. (Tr. 21) As the trier of fact, the ALJ was in the best position to gauge Mitchell's credibility and, therefore, his credibility finding should be affirmed. See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) ("If an ALJ explicitly discredits the

claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.").

The ALJ also noted that his RFC determination was supported by the opinion of Despine Coulis, M.D., a State agency reviewing physician who had an opportunity to review a significant amount of the medical evidence in the record. (Tr. 21, 733-38) This demonstrates that the ALJ based his RFC determination on the record as a whole, and not simply on his analysis of Mitchell's credibility.

Dr. Coulis opined that Mitchell could lift or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk (with normal breaks) for at least two hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; only occasionally perform postural or manipulative activities, except that stairs, ladders and body positions requiring body flexion are limited because of her obesity, and crawling for a prolonged period may cause increased left knee pain. No manipulative, visual or communicative limitations were established. Finally, Dr. Coulis opined that Mitchell should avoid exposure to air allergens and toxins because of asthma.

The record also contained a residual functional capacity opinion from Mitchell's treating cardiologist Dr. Lim, dated June 6, 2011. (Tr. 763-764) The ALJ found Dr. Lim's opinion relied heavily on Mitchell's subjective reports of symptoms and limitations and was, therefore, inconsistent with the treatment notes in the record. For example, Dr. Lim noted that Mitchell needed a cane, yet this was never noted by her orthopedists. Dr. Lim also opined that she would need to lie down or recline during the day to alleviate symptoms from her knee pain, yet Mitchell's orthopedists gave no such limitations to Mitchell and in fact directed her to exercise on a regular basis and participate in physical therapy. Further, Dr. Lim had no opportunity to

review the treatment notes from other treating physicians, whereas Dr. Coulis did have such an opportunity. For these reasons, the ALJ correctly gave little weight to Dr. Lim's opinion and more weight to Dr. Coulis' opinion. "The ALJ need not give controlling weight to a physician's RFC assessment that is inconsistent with other substantial evidence in the record." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (citing Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)).

In summary, the Court finds and concludes there was substantial evidence to support the ALJ's RFC determination. Having properly determined Mitchell's RFC, the ALJ consulted with a vocational expert, who noted that Mitchell's past work as a medical assistant was performed at a light exertional level, and determined that her current RFC precluded the performance of her past work. (Tr. 22, 91) The ALJ then posed a hypothetical question to the vocational expert that included all of the limitations found in the ALJ's RFC determination. (Tr. 93) In response, the vocational expert testified that such a person could perform jobs such as patcher, inspector, and charge-account clerk, all of which exist in significant numbers in the national economy. (Tr. 93-94) "Because the hypothetical was adequate, the vocational expert's testimony was reliable to establish that there are jobs that [Plaintiff] can perform that exist in significant numbers within the regional and national economies." Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010).

**VI.    Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 29th day of September, 2014.

                                                     _/s/ John A. Ross_
                                                   **JOHN A. ROSS**
                                                   **UNITED STATES DISTRICT JUDGE**